# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

RHETT A. DESSELLE

CIVIL ACTION

VERSUS

19-565-SDD-RLB

STATE OF LOUISIANA THROUGH
THE DEPARTMENT OF
TRANSPORTATION & DEVELOPMENT

## RULING

This matter is before the Court on the *Motion for Summary Judgment*[1] filed by the Defendant, the Louisiana Department of Transportation ("DOTD"). Plaintiff Rhett A. Desselle ("Plaintiff") filed an *Opposition*.[2] DOTD filed a *Reply*,[3] to which Plaintiff filed a *Sur-Reply*.[4]  For the following reasons, DOTD's *Motion* shall be granted.

## I.    BACKGROUND

This is an age discrimination case. DOTD is a state government agency that manages Louisiana's infrastructure.[5] DOTD has nine district offices throughout the state, and a District Administrator manages each district.[6] Plaintiff is currently an Assistant District Administrator, or "Engineer 8," for DOTD District 8.[7] Plaintiff has worked for DOTD in various capacities since 1983.[8] Plaintiff, who is 56 years old, alleges he was not promoted because of his age.

---

[1] Rec. Doc. No. 13.
[2] Rec. Doc. No. 16.
[3] Rec. Doc. No. 19.
[4] Rec. Doc. No. 22.
[5] Rec. Doc. No. 13-8, p. 1; Rec. Doc. No. 16-1, p. 1.
[6] Rec. Doc. No. 13-8, p. 1; Rec. Doc. No. 16-1, p. 1.
[7] Rec. Doc. No. 13-8, p. 2; Rec. Doc. No. 16-1, p. 1.
[8] Rec. Doc. No. 13-8, p. 2; Rec. Doc. No. 16-1, p. 1.
66916

On February 5, 2018, DOTD posted a job opening for District Administrator, also known as "Engineer 9," for District 8.[9] The minimum qualifications were a current Louisiana license to practice professional engineering plus eight years of professional engineering experience, two years of which must have been at the supervisory level or above.[10] The position description emphasized leadership as a key component of the job.[11] The position description stated that fifty percent of the role was to provide leadership to District staff, and twenty-five percent required the District Administrator to "'confer[], advise[], [and] negotiate[] with federal, state, and local officials, private entities, members of the public, and other elected/appointed officials on a variety of issues, some sensitive and controversial."[12] Plaintiff applied, as did Stephen Buskie, Jeffrey Connella, Jonathan Lachney, Patrick Landry, Troy Roussell, Michael DeSelle, and, according to Plaintiff, Amar Jindal.[13] Roussell, who, like Plaintiff, was an employee of DOTD, was chosen for the position.

The Assistant Secretary of Operations, Vince Latino ("Latino"), was the hiring manager and administered the interview process.[14] He prepared a "selection matrix" which awarded applicants points in the following manner: one point for each year of job-related experience with a maximum of fifteen points; one point for each year of supervisory experience with a maximum of fifteen points; two points for each "Successful" rating and three points for each "Exceptional" rating on the last two years of performance evaluations up to a maximum of five points; and a maximum of five points based on the

---

[9] Rec. Doc. No. 13-8, p. 6; Rec. Doc. No. 16-1, p. 6.
[10] Rec. Doc. No. 13-8, p. 6–7; Rec. Doc. No. 16-1, p. 6.
[11] Rec. Doc. No. 13-8, p. 7; Rec. Doc. No. 16-1, p. 6.
[12] Rec. Doc. No. 13-8, p. 7; Rec. Doc. No. 16-1, p. 6.
[13] Rec. Doc. No. 13-8, p. 7; Rec. Doc. No. 16-1, p. 6.
[14] Rec. Doc. No. 13-8, p. 8; Rec. Doc. No. 16-1, p. 6.
66916

applicant's usage of sick and personal leave.[15] Latino reviewed all of the applications and scored the above categories, compiling the "application score."

The applicants' ages and application scores were as follows:

| Name[16] | Application Score | Rank |
|---|---|---|
| Jonathan Lachney (48) | 38.60 | 1 |
| Stephen Buskie (62) | 37.70 | 2 |
| Rhett Desselle (Plaintiff) (56) | 37.30 | 3 |
| Patrick Landry (56) | 37.10 | 4 |
| Michael DeSelle (50) | 37.00 | 5 |
| Troy Roussell (47)[17] | 36.05 | 6 |
| Jeffrey Connella (48)[18] | 32.15 | 7 |
| Amar Jindal[19] (77) | Did Not Participate | Did Not Participate |

The applicants were invited to interview with a selection panel.[20] Latino chose the members of the selection panel.[21] Latino prepared eight interview questions purportedly

---

[15] Rec. Doc. No. 13-8, p. 8–11; Rec. Doc. No. 16-1, p. 6–11; Plaintiff contends that the capping of supervisory and job-related experience was discriminatory.

[16] This chart is derived from Plaintiff's exhibit Rec. Doc. No. 16-17. Consistent with Fed. R. Civ. P. 56, the Court will take these largely uncontradicted (except as noted below) statements as true for the purposes of this *Ruling*.

[17] In response to Rec. Doc. No. 13-8, Plaintiff admitted that Roussell was 47 years old. Rec. Doc. No. 13-8, p. 11; Rec. Doc. No. 16-1, p. 9. However, in Rec. Doc. No. 16-17, Plaintiff contends that Roussell was 46 years old, and that his date of birth is May 12, 1971. It is undisputed that the interview occurred on March 27, 2018, so per Roussell's purported date of birth, he would have been about a month and a half shy of 47. This minor discrepancy does not change the Court's analysis, and the Court will assume that Roussell was almost 47 years old.

[18] As is the case with Roussell, there is a discrepancy between Plaintiff's evidence and its admissions. Plaintiff admitted that Connella was 49 years old at the time of the interview but asserts that he was 48 in Rec. Doc. No. 16-17. The same exhibit lists his date of birth as April 18, 1969, which would have made him a little over a month shy of 49 years old at the time of the interview. As with the discrepancy regarding Roussell's age, this does not affect the Court's analysis, and the Court will assume that Connella was almost 49 years old.

[19] Plaintiff contends that Jindal applied for the position but did not interview for it.

[20] Rec. Doc. No. 13-8, p. 8; Rec. Doc. No. 16-1, p. 7.

[21] Rec. Doc. No. 13-8, p. 8–9; Rec. Doc. No. 16-1, p. 7.

based on recommendations from an internal DOTD document titled "Selecting the Best."[22] Latino provided the panel with a scoresheet to score the applicants' answers on a scale of one, meaning "very strong evidence the skill is not present," to five, "meaning very strong evidence the skill is present."[23] The eight questions were:

1.  "Why do you want this job?"

2.  "Describe your experience in dealing with the press, the DOTD Public Information Section, elected officials, and the public?"

3.  "If you had to choose three skills for a successful professional life, what would they be and why?"

4.  "Describe three challenges facing DOTD, specifically the District, now and in the future. Please tell us your ideas regarding how to address these challenges."

5.  "This position will be greatly involved in Emergency Operations in response to emergency events. Please describe your experience with Emergency Operations in response to emergency events."

6.  "Describe the last time you disagreed with your supervisor over a work issue. How did you resolve the situation and would your actions have differed if you were the supervisor? If so, how?"

7.  "How would you describe your management style? How have you developed the people you've managed?"

---

[22] Rec. Doc. No. 13-8, p. 9; Rec. Doc. No. 16-1, p. 7.
[23] Rec. Doc. No. 13-8, p. 9; Rec. Doc. No. 16-1, p. 8.
66916

8. "Other than what was discussed, describe how your background and experience have prepared you for this position?"[24]

Panelists were also asked to rate each candidate on the characteristics of "communication skills" and "leadership/professionalism," and examples of each characteristic were provided.[25] The maximum points per characteristic was five. The panelists only evaluated the candidates' interview responses; they did not receive the candidates' job applications and did not know their ages.[26]

After the interviews, Latino combined every panelist's score for each applicant and calculated each applicant's average interview score.[27] The applicants' ages and average interview scores are provided in the chart below:

| Name[28] | Interview Score | Rank |
|---|---|---|
| Jeffrey Connella (48)[29] | 36.71 | 1 |
| Troy Roussell (47)[30] | 35.21 | 2 |
| Jonathan Lachney (48) | 34.00 | 3 |
| Michael DeSelle (50) | 32.14 | 4 |
| Rhett Desselle (Plaintiff) (56) | 31.43 | 5 |
| Patrick Landry (56) | 26.05 | 6 |
| Stephen Buskie (62) | 23.07 | 7 |
| Amar Jindal[31] (77) | Did Not Participate | Did Not Participate |

---

[24] Rec. Doc. 13-1, p. 81–84.
[25] Rec. Doc. No. 13-8, p. 9–10; Rec. Doc. No. 16-1, p. 8–11.
[26] Rec. Doc. No. 13-8, p. 10; Rec. Doc. No. 16-1, p. 8.
[27] Rec. Doc. No. 13-8, p. 10; Rec. Doc. No. 16-1, p. 8.
[28] This chart is derived from Plaintiff's exhibit Rec. Doc. No. 16-17. Consistent with Fed. R. Civ. P. 56, the Court will take these largely uncontradicted (except as noted below) statements as true for the purposes of this *Ruling*.
[29] See *supra* note 18.
[30] See *supra* note 17.
[31] Plaintiff contends that Jindal applied for the position but did not interview for it.
66916

The applicants' total scores, comprised of their interview scores, communication scores, leadership/professionalism scores, and application scores, are summarized in the chart below:

| Name[32] | Combined Score | Rank |
|---|---|---|
| Jonathan Lachney (48) | 81.89 | 1 |
| Troy Roussell (47) | 80.76 | 2 |
| Michael DeSelle (50) | 78.57 | 3 |
| Rhett Desselle (Plaintiff) (56) | 77.66 | 4 |
| Jeffrey Connella (48) | 71.86 | 5 |
| Patrick Landry (56) | 71.16 | 6 |
| Stephen Buskie (62) | 68.77 | 7 |
| Amar Jindal (77) | Did Not Participate | Did Not Participate |

The three applicants with the highest scores were invited to participate in a second interview with DOTD Secretary Shawn D. Wilson; these candidates were Jonathan Lachney, Troy Roussell and Michael DeSelle—not the Plaintiff.[33] Secretary Wilson awarded: nine points to Troy Roussell; five points to Jonathan Lachney; and seven points to Michael DeSelle.[34] Roussell had the highest total score was awarded the position.

After compiling the results of the interview process, Latino sent the file materials to DOTD Human Resources for validation and compliance review.[35] Subsequently, "Latino was notified by Human Resources that the selection was in compliance with DOTD guidelines,"[36] but Human Resources did not validate the selection because two of

---

[32] Rec. Doc. No. 13-8, p. 10–11; Rec. Doc. No. 16-1, p. 9.
[33] Rec. Doc. No. 13-8, p. 10–11; Rec. Doc. No. 16-1, p. 9.
[34] Rec. Doc. No. 13-8, p. 10–11; Rec. Doc. No. 16-1, p. 9.
[35] Rec. Doc. No. 13-8, p. 10–11; Rec. Doc. No. 16-1, p. 9.
[36] Quoting Rec. Doc. No. 13-8, p. 10. Plaintiff "denies the allegation that the selection was done in compliance with DOTD guidelines" on hearsay grounds. Rec. Doc. No. 16-1, p. 9. Plaintiff's objection is
66916

the selection panelists (Breeden and Hollins) had not completed a training course on hiring.[37] Although it is disputed exactly how or why, the panelist training requirement was subsequently waived, and the selection was validated.[38] On April 19, 2018, Latino notified Roussell that he had been selected for the District Administrator position, and Latino informed the other applicants that they had not been selected.[39]

Plaintiff has no evidence that any member of the panel made any negative comments about Plaintiff's age during his employment, and Plaintiff concedes that none of the panelists made age related comments during his interview.[40] However, Latino may have made a negative comment about the age of a different employee at some point before the interview.[41] Plaintiff seeks recovery under the Age Discrimination in Employment Act[42] ("ADEA") and the Louisiana Employment Discrimination Law[43] ("LEDL");[44] the parties agree that federal precedent applies to the state law claims.[45]

---

noted, and the Court will not consider this portion of Latino's Affidavit as evidence of the truth of the matter asserted in the underlying statement, to wit, that the selection process was done in compliance with DOTD guidelines. However, Latino does have personal knowledge of what DOTD Human Resources told him. Therefore, the Court will credit this sentence of the affidavit as evidence that Human Resources told Latino that the selection process was compliant with DOTD guidelines, but not as evidence that the selection process was in fact compliant with DOTD guidelines.

[37] Rec. Doc. No. 13-8, p. 11; Rec. Doc. No. 16-1, p. 9.
[38] Rec. Doc. No. 13-8, p. 11; Rec. Doc. No. 16-1, p. 9.
[39] Rec. Doc. No. 13-8, p. 12; Rec. Doc. No. 16-1, p. 10.
[40] Rec. Doc. No. 13-8, p. 15; Rec. Doc. No. 16-1, p. 13.
[41] Rec. Doc. No. 16-1, p. 13.
[42] 29 U.S.C. § 621 et seq.
[43] La. R.S. 23:301 et seq.
[44] Rec. Doc. No. 13-8, p. 16; Rec. Doc. No. 16-1, p. 13. Plaintiff does not maintain a hostile work environment claim, so the portions of DOTD's *Motion* that advocate dismissal of that claim are moot.
[45] Rec. Doc. No. 16, p. 11; Rec. Doc. No. 13-9, n. 8.

66916

II.    **LAW AND ANALYSIS**[46]

   A.  **Summary Judgment Standard**

In reviewing a party's motion for summary judgment, the Court will grant the motion if (1) there is no genuine issue of material fact, and (2) the mover is entitled to judgment as a matter of law.[47] This determination is made "in the light most favorable to the opposing party."[48] A party moving for summary judgment "'must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case.'"[49] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[50] However, the non-moving party's burden "'is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"[51]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[52] All reasonable factual inferences are drawn in favor of the nonmoving party.[53] However, "[t]he Court has no duty

---

[46] The Court notes that DOTD, as an arm of the state of Louisiana, potentially could have asserted sovereign immunity. DOTD has not. Moreover, because DOTD removed this case to this Court (Rec. Doc. No. 1), the Court finds that DOTD has waived its sovereign immunity as to the claims before the Court. See *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 242 (5th Cir. 2005).

[47] FED. R. CIV. P. 56(a).

[48] *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); 6 V. MOORE, FEDERAL PRACTICE 56.15(3) (2d ed. 1966)).

[49] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).

[50] *Rivera v. Houston Indep. Sch. Dist.,* 349 F.3d 244, 247 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

[51] *Willis v. Roche Biomedical Lab., Inc.,* 61 F.3d 313, 315 (5th Cir. 1995) (quoting *Little*, 37 F.3d at 1075).

[52] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[53] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

66916

to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[54] "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiffs [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'"[55]

### B.  Discrimination under the ADEA[56]

The ADEA makes it "unlawful for an employer to fail or refuse to hire...any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."[57] A plaintiff may prove a case by direct or circumstantial evidence.[58] Evidence is circumstantial when an inference is required for the evidence to tend to prove discriminatory animus.[59]

Plaintiff relies on circumstantial evidence, so the three-step, burden-shifting framework articulated in *McDonnell Douglas v. Green applies*.[60] "Under this framework, the employee must first establish a prima facie case of age discrimination."[61] If the plaintiff-employee meets this initial burden, "the burden of production shifts to his

---

[54] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

[55] *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249).

[56] The parties agree that the LEDL claim is governed by the same analysis. See Rec. Doc. No. 16, p. 11; Rec. Doc. No. 13-9, n. 8.

[57] 29 U.S.C. § 623(a)(1).

[58] *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

[59] *Terry v. Promise Hosp. of Ascension, Inc*., No. CIV.A. 13-128-SDD, 2014 WL 4161581, at *5 (M.D. La. Aug. 19, 2014).

[60] *Squyres v. Heico Companies, L.L.C*., 782 F.3d 224, 231 (5th Cir. 2015).

[61] *Id.*

66916

employer to articulate a legitimate, nondiscriminatory reason for the challenged employment decision."[62] If the employer successfully articulates a reason, "'the presumption raised by the prima facie case is rebutted and drops from the case.'"[63] In the final step of the analysis, the employee must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."[64] The employee-plaintiff can show pretext "'either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence.'"[65] Ultimately, "the employee has the burden of persuasion to establish 'that age was [a] "but-for" cause of the employer's adverse decision.'"[66]

### 1. Plaintiff's *Prima Facie* Case

To establish a *prima facie* case of failure to promote based on age, a plaintiff must show that: "(1) he was over forty, (2) was qualified for the position sought, (3) was not promoted, and (4) the position was filled by someone younger or the failure to promote was due to age."[67] DOTD concedes that Plaintiff can establish his *prima facie* case.

### 2. DOTD's Legitimate Reason for Not Promoting Plaintiff

"As stated above, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the employment decision."[68] "The defendant's burden in this second step is met by producing evidence which, 'taken as a true, would permit the

---

[62] *Id.*
[63] *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).
[64] *Id.* (quoting *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097).
[65] *Id.* (quoting *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir.2010)).
[66] *Squyres v. Heico Companies, L.L.C.*, 782 F.3d 224, 231 (5th Cir. 2015) (quoting *Burrage v. United States*, 571 U.S. 204, 213, 134 S. Ct. 881, 889, 187 L. Ed. 2d 715 (2014)). The alteration "[a]" comes from *Burrage* and suggests that there can be more than one but-for cause. This proposition is analyzed in depth below.
[67] *Tratree v. BP N. Am. Pipelines, Inc.*, 277 F. App'x 390, 395 (5th Cir. 2008).
[68] *Palacios v. City of Crystal City, Texas*, 634 F. App'x. 399, 401-02 (5th Cir. 2015).

66916

conclusion that there was a nondiscriminatory reason for the adverse action."[69] At this stage, the defendant-employer's burden is one of "'production, not persuasion,' and 'involve[s] no credibility assessment.'"[70] However, "an employer must articulate a non-discriminatory reason *with 'sufficient clarity'* to afford the employee a realistic opportunity to show that the reason is pretextual."[71]

DOTD asserts that Plaintiff was not promoted because he did not receive the highest score in the selection process.[72] Plaintiff attacks DOTD's purported reason on two fronts. First, Plaintiff asserts that the selection process was tainted by deviations from DOTD internal policy.[73] Second, Plaintiff assails DOTD's evidence, stating that the interview was entirely subjective and the panelists' scores lack contemporaneous explanation.[74] In effect, Plaintiff argues that the interview scores are "really the sort of nonspecific, content-less explanation that [the Fifth Circuit] has found insufficient to satisfy the employer's burden of production."[75]

The purported deviations from internal policy in the selection process are irrelevant at this stage of the analysis. The Fifth Circuit has recognized that such deviations may be evidence of pretext under certain conditions,[76] however, any deviations would only bear on the legitimacy of the employer's reason for the allegedly discriminatory act—not the

---

[69] *Juneau v. Quality Christmas Tree, Ltd*., No. CIV.A. H-13-2535, 2014 WL 3796406, at *2 (S.D. Tex. July 30, 2014) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993) (emphasis in original)).
[70] *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).
[71] *Patrick v. Ridge*, 394 F.3d 311, 317 (5th Cir. 2004) (emphasis in original).
[72] Rec. Doc. No. 13-9, p. 9.
[73] Rec. Doc. No. 16, p. 16–17.
[74] Rec. Doc. No. 16, p. 5–16; Rec. Doc. No. 22, p. 8–9.
[75] *Alvarado v. Texas Rangers*, 492 F.3d 605, 616 (5th Cir. 2007).
[76] *Julian v. City of Houston*, 618 F. App'x 211, 214, n. 3 (5th Cir. 2015).

66916

existence of the reason itself. The Court will consider the alleged deviations from internal policy in the pretext step of the analysis.

Turning to Plaintiff's subjectivity argument, DOTD argues that the interview was only part of the selection process, and, in any event, it has provided explanations for how the panelists scored the applicants. Under Latino's selection matrix, there were 90 total points available.[77] Forty of those points were based on quantifiable data contained in each applicant's work history.[78] The remaining 50 points were based on the interview scores, including the communication and leadership/professionalism scores.[79] Therefore, the Court finds that almost half of Plaintiff's score was determined by reference to objective criteria.

In *Alvarado v. Texas Rangers*,[80] the Fifth Circuit reviewed a similar selection process in which applicants' total scores were based on the results of a written exam as well as a subjective interview.[81] Due to the hybrid nature of the selection process, the court considered whether the interview score was a determinative factor in the final selection before considering the merits of the plaintiff's contentions about the interview score.[82] This Court will do the same.

In order to determine whether the interview score was a determinative factor in the final selection, the Court must consider the effect that the interview scores had on the applicants' total scores. The applicants' interview scores had significant effects on their total scores. Stephen Buskie had the second highest application score; yet, after the

---

[77] This is excluding the final interview with the Secretary for the top three applicants.
[78] Rec. Doc. No. 13-8, p. 8; Rec. Doc. No. 16-1, p. 6–7.
[79] Rec. Doc. No. 13-8, p. 9–10; Rec. Doc. No. 16-1, p. 8–9.
[80] *Alvarado v. Texas Rangers*, 492 F.3d 605, 616 (5th Cir. 2007).
[81] *Id.* at 610.
[82] *Id.* at 616.

66916

interview, he had the lowest total score. On the other hand, Roussell had the second-lowest application score; yet, he had the second-highest total score after the interview. Following the interview, Plaintiff dropped from third to fourth—a drop which precluded his advancement to the final round of the process. The Court concludes that the interview process was a determinative factor. As such, the Court must analyze the sufficiency of DOTD's proffered reason.

"An employer's subjective reason for not selecting a candidate, such as a subjective assessment of the candidate's performance in an interview, may serve as a legitimate, nondiscriminatory reason for the candidate's non-selection."[83] "Such a reason will satisfy the employer's burden of production, however, only if the employer articulates a clear and reasonably specific basis for its subjective assessment."[84] In sum, the Court inquires as to whether the employer has proffered a reason for why it assessed the plaintiff the way it did.

DOTD submitted as summary judgment evidence: the job description,[85] Roussell's and Plaintiff's applications,[86] the scoring matrix with scores,[87] and each panelist's notes from the interview.[88] As DOTD admits, the panelists' notes only contain portions of the applicants' answers, rather than explanatory opinions.[89] DOTD also offers Latino's stated reasons for not promoting Plaintiff as well as statements from panelists obtained during

---

[83] *Id.*
[84] *Id.*
[85] Rec. Doc. No. 13-3, p. 63–66.
[86] Rec. Doc. No. 13-3, p. 43–61; Rec. Doc. No. 13-4, p. 17–29.
[87] Rec. Doc. No. 13-1, p. 74.
[88] Rec. Doc. No. 13-1, p. 81–164.
[89] Rec. Doc. No. 19, p. 3.
66916

the DOTD internal investigation that paralleled this case. Plaintiff objects to those pieces of evidence.

Plaintiff objects that the affidavits and panelists' statements are post hoc rationalizations that cannot carry DOTD's burden of production and cites *Heinsohn v. Carabin & Shaw P.C.* [90] in support. The plaintiff in *Heinshon* brought an FMLA claim, but the Fifth Circuit applied the *McDonnell Douglas* burden-shifting framework as this Court does here. Plaintiff cites *Heinshon* for the proposition that, "[a]s the ultimate issue is the employer's reasoning *at the moment* the questioned employment decision is made, a justification that *could not* have motivated the employer's decision is not evidence that tends to illuminate this ultimate issue and is therefore simply irrelevant at this stage in the inquiry."[91] Plaintiff's reliance on that quote is misplaced because the *Heinshon* court made that statement in the context of the third step, i.e. pretext, of the *McDonnell Douglas* framework.[92] In fact, four paragraphs prior to that statement, the court explicitly stated that the employer's post hoc deposition testimony was sufficient to carry the defendant's burden of demonstrating a legitimate reason for the employment decision.[93] Therefore, Plaintiff's argument that DOTD cannot rely on evidence created after the incidents giving rise to the suit is meritless, and the Court will consider the content of the DOTD's evidence on the issue of whether DOTD demonstrates a legitimate reason for not promoting Plaintiff.

---

[90] 832 F.3d 224, 236 (5th Cir. 2016).
[91] Rec. Doc. No. 22, p. 8–9 (quoting *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 237 (5th Cir. 2016)).
[92] *Heinsohn v. Carabin & Shaw, P.*C., 832 F.3d 224, 237 (5th Cir. 2016).
[93] *Id.* "It produced evidence of legitimate, nondiscriminatory reasons for terminating Heinsohn, which refute or contest Heinsohn's circumstantial evidence of a discriminatory reason. C & S produced Shaw's deposition, in which he averred that C & S terminated Heinsohn because (1) she had missed appeals deadlines, and (2) she had attempted to conceal this by failing to inform Escobedo and by sending good-cause letters without Escobedo's knowledge."
66916

Although the interview process was subjective, "[a]n employer's subjective reason for not selecting a candidate, such as a subjective assessment of the candidate's performance in an interview, may serve as a legitimate, nondiscriminatory reason for the candidate's non-selection. Such a reason will satisfy the employer's burden of production, however, only if the employer articulates a clear and reasonably specific basis for its subjective assessment."[94] Latino's affidavit generally recounts the necessary skills for success in the Engineer 9 position. For example, he states that, "[i]t is the skill set of leadership and management that matters for the [District Administrator] position, not tenure."[95] The only testimony that informs how the panelists graded the applicants' responses to interview questions is: "I provided the panelists with a scoring guide or benchmarks to be used. A score of 1 meant 'very strong evidence that skill is not present' and a score of 5 meant 'very strong evidence the skill is present.'"[96] This response, while illustrative of how the applicants were scored, is not an explanation of why Plaintiff received his score.

Latino's responses to the DOTD investigator are more helpful. When asked "[w]hat qualifications did the successful candidate have?", Latino responded, "[t]he successful candidate showed that he had all the attributes listed above.[97]" He also stated in response to a different question, "the unsuccessful candidates did not have the same qualifications

---

[94] *Alvarado v. Texas Rangers*, 492 F.3d 605, 616 (5th Cir. 2007).
[95] Rec. Doc. No. 13-1, p. 4.
[96] Rec. Doc. No. 13-1, p. 6.
[97] The attributes were elicited in response to another question. The exact answer was: "In order to be a District Administrator, one must have the following qualities: hard working, leadership, honest, loyal, understanding of the Department, good communicator, ability to deal with others (workers, public, press, and public officials). Also must have the ability to be a mentor to others in the District in order to have succession planning for the District Administrator position. In addition as per the matrix they must have job related experience, managerial experience, Performance (PES), attendance, communication, and leadership professionalism." Rec. Doc. No. 13-1, p. 79.
66916

when all of the criteria were taken into consideration."[98] Latino purportedly did not know the identity of the complainant.[99]

These statements shed light on Latino's purported reason for not selecting Plaintiff. He provided the attributes he viewed as necessary for success in the District Administrator position and stated that Roussell had all of those attributes. This suggests that Latino had those attributes in mind when scoring the applicants' interviews. Additionally, the Court finds that Latino's description of the necessary attributes is a "clear and reasonably specific basis" for his subjective assessment of Plaintiff's interview because he provides enough information for Plaintiff to be able to counter Latino's subjective reason.[100] Furthermore, the Fifth Circuit has acknowledged that "choosing some other candidate because he is the best-qualified individual for the job is generally a legitimate, nondiscriminatory reason for an adverse employment decision…."[101] Therefore, Latino's statements as to why Roussell was scored higher than Plaintiff are probative of why Plaintiff was scored lower. The statements provide some basis for Latino's subjective assessment of Plaintiff's interview.[102]

DOTD also introduces the response that Dr. Eric Kalivoda, another panelist, provided during the internal investigation.[103] He stated that he was looking for "adequate experience with District functions and operations, leadership experience, skills and qualities, and a big-picture understanding and vision for leading the district in the future

---

[98] Rec. Doc. No. 13-1, p. 79.
[99] *Id.*
[100] *Alvarado v. Texas Rangers*, 492 F.3d 605, 616 (5th Cir. 2007).
[101] *Patrick v. Ridge*, 394 F.3d 311, 318 (5th Cir. 2004).
[102] *Alvarado*, 492 F.3d at 616.
[103] Rec. Doc. No. 13-6, p. 5.
66916

which could be very difficult depending on the revenue situation."[104]  As to how he graded

the candidates:

> I graded the candidates based on their responses to the interview questions. Most of the candidates have the necessary knowledge and experience with District functions and operations. Most of the candidates also have the managerial experience with District functions and operations. The largest differences between candidates was their respective knowledge of the big-picture issues we face and their vision for how to cope with the challenges the District will face in the future. The successful candidate, which was my highest ranked candidate, demonstrated the best understanding of the big-picture issues that DOTD faces (including District 08) and the best vision for how to address the challenges that District 08 faces going forwards.[105]

He further stated that:

> The successful candidate, which was my highest ranked candidate, provided the best responses to the questions dealing with leadership and vision .... The other candidates, when compared to the successful candidate did not provide the best responses to the questions dealing with experience, leadership, and vision, and therefore received lower cumulative interview scores.[106]

Dr. Kalivoda stated how he scored the applicants and what factors he took into account.

He also explained why he scored Roussell the way he did, and why he scored Plaintiff

and the other applicants less than Roussell. The statements provide a clear basis for Dr.

Kalivoda's subjective assessment of Plaintiff's interview.

DOTD also introduces the response that panelist Chris Knotts provided during the

internal investigation.[107] He stated that his "goal was to select the applicant that had the

best technical, managerial and organizational skills...."[108] He also stated, "[i]f someone is

skilled in the technical aspects of the job and possesses excellent people skills and is

---

[104] *Id.*
[105] *Id.*
[106] *Id.*
[107] Rec. Doc. No. 13-6, p. 23–24.
[108] *Id.*

66916

organized, they will earn the respect of their staff and people will 'want' to serve under them. It is all about LEADERSHIP!".[109] Knotts noted that, "the successful candidate possessed the technical, managerial and organizational skills necessary to be successful in the position."[110] Notably, he stated that his "rankings were based on [his] 34 years of engineering experience and [his] professional judgment of the skills necessary to perform the duties of the District Administrator position."[111] Therefore, he tied his scoring of candidates to the technical, managerial, and organizational skills noted above, which provides a clear basis for his subjective assessment of Plaintiff's interview. DOTD has carried its burden of producing a legitimate nondiscriminatory reason for not promoting Plaintiff because DOTD has offered a reasonably clear factual basis for some of the panelists' subjective assessments of Plaintiff.[112]   DOTD offers additional summary judgment evidence as well.

DOTD also offered the panelists' scoresheets and notes for Plaintiff's interview and Roussell's interview.[113] Plaintiff argues that the scoresheets are insufficient to meet DOTD's burden because they do not contain the panelists' opinions of the applicants; rather, they contain summaries of the applicants' responses to the interview questions.[114] Plaintiff also takes umbrage with the form of the questions as compared to the rating scale because, for example, some of the questions ask the applicant to describe an experience, but the "bench mark responses" ask the panelist to rate the response on the one to five

---

[109] *Id.*
[110] *Id.*
[111] *Id.*
[112] *Alvarado v. Texas Rangers*, 492 F.3d 605, 616 (5th Cir. 2007).
[113] See Rec. Doc. No. 13-1, p. 80–164.
[114] Rec. Doc. No. 16, p. 19–21; Rec. Doc. No. 22, p. 3–7.

66916

"evidence of skill present" scale described above.[115] Relatedly, Plaintiff contends that the benchmark responses provided panelists with no guidance, instruction, or criteria with which to evaluate the applicants' responses.[116] At core, Plaintiff argues there is no way to determine how the panelists arrived at their scores.

DOTD rebuts that "[t]he scoring sheets also contain notes which show the specific points in the candidate's responses that reflect the corresponding point score."[117] But DOTD concedes that the scoresheets do not contain more descriptive information because "DOTD training prohibits a panelist from 'documenting general opinions, impressions, or interpretations of what was said by the candidate that are not job-related.'"[118]

The Fifth Circuit has visited this issue on several occasions. The court in *Alvarado* held that the defendant had not met its burden of production where its only evidence was total interview scores from the six panelists.[119] The court noted that the defendant did not provide evidence as to how or why the interviewers arrived at the scores nor did they provide evidence of why the applicants who received the positions scored higher than the plaintiff.[120] Further, "Alvarado's score sheets contain[ed] no notes or comments on her interview performance, and DPS [did] not point[] to any deposition testimony by the Board members that would shed light on why they scored Alvarado and the other candidates the way they did."[121]

---

[115] Rec. Doc. No. 16, p. 19–21; Rec. Doc. No. 22, p. 3–7.
[116] Rec. Doc. No. 16, p. 19–21; Rec. Doc. No. 22, p. 3–7.
[117] Rec. Doc. No. 19, p. 3.
[118] *Id.*
[119] *Alvarado v. Texas Rangers*, 492 F.3d 605, 617 (5th Cir. 2007).
[120] *Id.*
[121] *Id.*

66916

*Inocencio v. Montalvo* is also relevant. The plaintiff challenged an interview-driven selection process wherein five panelists asked a series of pre-determined questions to four interviewees.[122] The Fifth Circuit distinguished *Alvarado*, noting that the panel's procedure was "extensively documented in the summary judgment record, which includes records of the job description, panel questions, the master score sheet, interviewee score sheets, and comments/observations from the panelists."[123] "A number of panelists made comments that suggested that Inocencio lacked relevant knowledge about the HIDTA position."[124] DOTD contends that *Inocencio* is on point and controls. Plaintiff distinguishes *Inocencio*, citing the "comments/observations from the panelists" as a critical factor.

The facts of this case fall somewhere between *Alvarado* and *Inocencio*. The *Alvarado* court cited to *Texas Dept. of Community Affairs v. Burdine*,[125] wherein the Supreme Court described the purpose of the second step of the *McDonnell Douglas* framework:

> The defendant need not persuade the court that it was actually motivated by the proffered [legitimate, non-discriminatory] reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate

---

[122] *Inocencio v. Montalvo*, 774 F. App'x 824, 827 (5th Cir. 2019).
[123] *Id*. at 831.
[124] *Id*.
[125] 450 U.S. 248 (1981).

66916

pretext. The sufficiency of the defendant's evidence should be evaluated by the extent to which it fulfills these functions.[126]

In light of *Alvarado*, *Inocencio*, other germane precedent, and the policies articulated in *Burdine*, the Court finds that DOTD has met its burden of production. First, DOTD's asserted justification for its hiring decision is that Plaintiff did not receive the highest score in the selection process. The interview was only a portion of that process—albeit a large portion.[127] Despite the fact that the interview score was a but-for cause of the Plaintiff's ultimate score, its eminence is diminished because it was not the sole factor.

Second, DOTD produced evidence of how panelists Latino, Dr. Kalivoda, and Knotts scored the candidates. Latino, Dr. Kalivoda, and Knotts consistently emphasized the same qualities that make a successful District Administrator. Relatedly, the panelists' notes, although based on the applicants' responses, are generally consistent, which indicates that the panelists all considered similar factors in their ranking of the applicants' answers.

DOTD's burden at this stage is not onerous. It merely must produce evidence that, if believed, would constitute a legitimate, nondiscriminatory reason for Plaintiff's non-promotion.[128] In the context of a subjective interview, DOTD must articulate a "clear and reasonably specific basis for its subjective assessment."[129] DOTD has met that burden because it has articulated the qualities that it (via the panelists) looked for when conducting the interview and explained that Roussell possessed those qualities in ways Plaintiff did not. The factual issue has been framed with sufficient clarity such that Plaintiff

---

[126] *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 255–56, 101 S. Ct. 1089, 1094, 67 L. Ed. 2d 207 (1981).
[127] Rec. Doc. No. 13-8, p. 8–10, Rec. Doc. No. 16-1, p. 6–9.
[128] *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007).
[129] *Id.* at 616.

66916

has a full and fair opportunity to demonstrate pretext.[130] The burden now shifts to Plaintiff to raise a genuine issue of material fact as to whether those reasons were pretextual.

### 3. Whether DOTD's Legitimate Reason for Not Promoting Plaintiff was Pretextual

As a preliminary matter, DOTD raises an issue regarding Plaintiff's burden of persuasion. DOTD asserts that, because Plaintiff stated in his deposition that Latino may have retaliated against Plaintiff for reasons unrelated to age, age discrimination cannot be the but-for cause of Plaintiff's termination.[131] As such, according to DOTD, Plaintiff's claim must fail.[132] Plaintiff argues that he merely must show that age was *a* but-for cause of his termination.[133]

The Fifth Circuit has answered this question. In *Squyres v. Heico Companies, LLC*, the court stated that, "under the ADEA, the employee has the burden of persuasion to establish 'that age was [a][134] 'but-for' cause of the employer's adverse decision.'"[135] *Burrage v. United States*, which the *Squyres* court cited in support of the previous statement, was a Supreme Court case that considered the degree of causation required for a conviction under the Controlled Substances Abuse Act.[136] While comparing standards of causation in different substantive contexts, the Court quoted its own opinion

---

[130] *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 255–56, 101 S. Ct. 1089, 1094, 67 L. Ed. 2d 207 (1981).
[131] Rec. Doc. No. 13-9, p. 19. Plaintiff testified that Latino may have harbored ill-will toward Plaintiff because Plaintiff gave Latino a poor performance review several years ago when Plaintiff was Latino's supervisor.
[132] *Id*.
[133] Rec. Doc. No. 16, p. 15.
[134] Alteration in original.
[135] *Burrage v. United States*, 571 U.S. 204, 134 S.Ct. 881, 889, 187 L.Ed.2d 715 (2014) (alteration in original) (quoting *Gross v. FBL Fin. Servs., Inc*., 557 U.S. 167, 176, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009)).
[136] *Id*.

66916

in *Gross v. FBL Financial Services, Inc.*,[137] an ADEA case.[138] The *Gross* Court had written that "a plaintiff must prove that age was the but-for cause of the employer's adverse decision,"[139] but the *Burrage* Court altered the quote to read "a plaintiff must prove that age was [a] 'but for' cause of the employer's adverse decision."[140] This non-binding dicta was endorsed by the Fifth Circuit in *Squyres*, so this Court will assume that there can be more than one but-for cause for an adverse employment decision.

"In determining whether the plaintiff's rebuttal precludes summary judgment, the question is whether the plaintiff has shown that there is a genuine issue of material fact as to whether this reason was pretextual."[141] The plaintiff may show pretext "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'"[142] Plaintiff argues that DOTD's proffered reason was pretextual because: (1) Plaintiff was clearly more qualified than Roussell; (2) Latino made discriminatory remarks in the past; and (3) DOTD deviated from internal procedures during the selection process.

Plaintiff asserts that he was clearly better qualified than Roussell. "A showing that the unsuccessful employee was 'clearly better qualified' (as opposed to merely better or as qualified) than the employees who are selected will be sufficient to prove that the employer's proffered reasons are pretextual."[143] Because the promotion process was controlled by the matrix Latino created,[144] Plaintiff's "better qualified" argument is also a

---

[137] *Gross*, 557 U.S. at 176.
[138] *Burrage*, *at* 889.
[139] *Gross*, 557 U.S. at 176.
[140] *Burrage*, *at* 889.
[141] *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (cleaned up).
[142] *Jackson v. Cal–Western Packaging Corp.*, 602 F.3d 374, 378–79 (5th Cir. 2010).
[143] *Moss*, 610 F.3d at 922–23.
[144] And the parties agree that Latino was required to create a matrix. Rec. Doc. No. 13-8, p. 4–5; Rec. Doc. No. 16-1, p. 2–3.

66916

challenge to the point allocation structure of the matrix. The use of a selection matrix complicates the "clearly more qualified" inquiry. While the selection matrix controls the result of the selection process, Latino's opinions and priorities influenced how he structured the matrix and allocated points within it. Therefore, Plaintiff may have been less qualified according to the matrix Latino created, but "clearly more qualified" if one disregards the matrix. Given this quirk, the Court will analyze Plaintiff's qualifications two ways. First, the Court will disregard the matrix and analyze Plaintiff's and Roussell's qualifications as they appear on paper and considering how they interviewed. Second, the Court will consider Plaintiff's challenge to the matrix itself as part of the analysis as to whether Latino deviated from DOTD procedure when he developed the matrix. The first inquiry, whether Plaintiff has introduced evidence sufficient to create a genuine issue of material fact as to being "clearly better qualified" without regard to the matrix, will also inform whether Latino structured the matrix in a discriminatory manner since, theoretically, the matrix should produce the best qualified applicant. The second analysis will focus on the point allocation within the matrix and whether Plaintiff has produced evidence that Latino's allocation of points was discriminatory—as Plaintiff argues.[145] This is appropriate because at the last step of the *McDonnell Douglas* analysis, Plaintiff's intermediate burden "merges with the ultimate burden of proving that the employee has been the victim of intentional discrimination."[146]

The following summary of Plaintiff's and Roussell's qualifications is drawn from Plaintiff's *Opposition* wherein the purported facts are supported by adequate citations to

---

[145] Rec. Doc. No. 16-1, p. 7.
[146] *Heinshon v. Carabin & Shaw, P.C.*, 832 F.3d 224, 237 (5th Cir. 2016).

66916

the record.[147] Plaintiff obtained his professional engineer's license in 1989, while Roussell obtained his ten years later. Plaintiff served as an Engineer 8, which is one position below District Administrator (Engineer 9), for at least six years compared to Roussell's two. Additionally, Plaintiff served as Assistant Secretary of Operations, a position above District Administrator, for four years and supervised approximately ten DOTD employees who held the position of District Administrator. Plaintiff supervised Roussell when Roussell was an Engineer 8. Plaintiff served as a District Administrator for three different Districts over two years. When Roussell and Plaintiff applied for the instant District Administrator position: Plaintiff had 36 hours of coursework towards a Master's degree in civil engineering compared to Roussell's zero; Plaintiff was licensed as a professional civil engineer, environmental engineer, and a flood plain manager, while Roussell was only licensed as a professional civil engineer; Plaintiff had supervised approximately 4,316 people during his tenure compared to Roussell's 288; Plaintiff had completed leadership training and served on national transportation committees while Roussell had not; and Plaintiff had ten more years of supervisory experience than Roussell. Finally, Plaintiff had been certified by the National Bridge Inspection Standards Program Management, certified as a National Traffic Incident Management Responder Trainer, certified by the Texas A&M Engineering Extension Service Infrastructure Protection, and certified as a National Weather Service Weather Ready Nation Ambassador, while Roussell had no certifications. Based on this purported disparity in qualifications, Plaintiff asserts that he was clearly more qualified.

---

[147] Rec. Doc. No. 16, p. 3–4.
66916

To show that he was "clearly better qualified" than Roussell and raise a fact question as to whether age discrimination was a factor in DOTD's promotion decision, Plaintiff "must present evidence from which a jury could conclude that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'"[148] "Unless the qualifications are so widely disparate that no reasonable employer would have made the same decision, any differences in qualifications are generally not probative evidence of discrimination."[149] "[T]he bar is set high for this kind of evidence."[150] "The ADEA does not require an employer 'to make proper decisions, only nondiscriminatory ones.'"[151]

Plaintiff does not argue that Roussell was not qualified. The minimum requirements for the position were a professional engineer license with at least eight years of professional engineering experience and two of those years must have been at the supervisory level or above.[152] Roussell had those qualifications and had risen steadily through each rank of DOTD's engineer career path from 1994 to 2018.[153] Instead, Plaintiff argues that he was more qualified than Roussell because Plaintiff had: more job and supervisory experience than Roussell; supervised Roussell twice; hired individuals for the District Administrator position; and held the District Administrator position for over two years.[154]  Plaintiff also had attained a higher level of education and had more industry certifications than Roussell.

---

[148] *Moss*, 610 F.3d at 917 (cleaned up).
[149] *Id.* (cleaned up).
[150] *Id.* (cleaned up).
[151] *Campbell v. Zayo Group, L.L.C.*, 656 F. App'x 711, 717 (5th Cir. 2016) (quoting *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005)).
[152] Rec. Doc. No. 13-1, p. 46.
[153] Rec. Doc. No. 13-8, p. 12; Rec. Doc. No. 16-1, p. 10.
[154] Rec. Doc. No. 16, p. 23.

66916

Plaintiff's advantage in years of experience does not necessarily translate into increased proficiency in management and leadership.[155] Likewise, the fact that Plaintiff supervised Roussell when Roussell was an intern and again when Roussell was an Engineer 8 has no bearing on whether Plaintiff was more qualified for the District Administrator position than Roussell. The fact that Plaintiff had hired individuals for the District Administrator position indicates that he knew the requirements for the position and had supervised people in the position but does not bear directly on his aptitude for the position. The fact that Plaintiff had held the District Administrator position for two years indicates he may have been more qualified than Roussell simply because he had previously performed the job, but that fact alone is not sufficient to raise an issue of material fact as to whether he was *clearly* more qualified. As to Plaintiff's advantages in education and certifications, Plaintiff has failed to tie those accolades to success in the District Administrator position, so they are not probative of his claim that he was clearly better qualified.

Plaintiff's prior experience is a factor in the "clearly better qualified" analysis, but the interview is also important. As such, the Court must analyze each person's interview performance as a qualification. There is no summary judgment evidence to indicate that the panelists demonstrated animus in their scoring of the applicants; in fact, the parties agree that the panelists did not know the applicants' ages during the interview.[156] Plaintiff

---

[155] *Moss*, 610 F.3d at 923 ("An attempt to equate years served with superior qualifications . . . is unpersuasive. Obviously, work experience is one component of defining who is more qualified, but greater experience alone will not suffice to raise a fact question as to whether one person is clearly more qualified than another." (cleaned up)).

[156] Rec. Doc. No. 13-8, p. 10; Rec. Doc. No. 16-1, p. 8.

66916

received an average interview score of 31.43 compared to Roussel's 35.21.[157] Therefore, the interview, taken alone, indicates that Roussell was more qualified than Plaintiff.

Mindful of the Fifth Circuit's admonition that the ADEA was "[not] intended to transform the courts into personnel managers,"[158] the Court finds that Plaintiff has not carried this heavy burden. In sum, while Plaintiff may have been more qualified based on his prior experience, the results of the interview indicate that Roussell possessed more of the less tangible qualities that the panelists deemed necessary for success in the District Administrator position. Plaintiff's and Roussell's qualifications were therefore not "so widely disparate that no reasonable employer would have made the same decision," so "any differences in [their] qualifications are [] not probative evidence of discrimination."[159]

Additionally, the Court notes that Roussell was not the only applicant who scored higher than Plaintiff. In fact, three other applicants scored higher than Plaintiff on the combined interview and application scores.[160] Plaintiff has produced no evidence as to those applicants' qualifications.

Plaintiff argues that Latino failed to follow internal DOTD procedure and that his failure to do so was based on discriminatory motives. "While a company's failure to follow internal procedures is generally not enough to create a genuine issue of fact as to discriminatory motives, the nature of the internal policy and the extent of the deviation in the particular case could give rise to evidence of pretext in light of all the other relevant

---

[157] Rec. Doc. No. 16-5, p. 1.
[158] *Moss*, 610 F.3d at 926 (quoting *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507–08 (5th Cir. 1988)).
[159] *Id.* at 923 (cleaned up).
[160] *See supra* text accompanying notes 35–38.
66916

facts."[161] "[M]ere deviations from policy, or a disagreement about how to apply company policy, do not show pretext."[162] A plaintiff must "connect a departure from or misapplication of procedure to a discriminatory motive..."[163]

Plaintiff argues that the selection process deviated from DOTD policy in four ways: (1) two of the panelists had not completed required interview training prior to serving on the panel, (2) Skip Breeden, one of the panelists, was not a "peer" (as required by DOTD regulations) because he was not an engineer, (3) Latino did not create benchmark responses or sample responses for the interview process, and (4) Latino improperly allocated points within the matrix.

The fact that two of the panelists had not completed required training prior to the interview is irrelevant. First, the parties agree that DOTD waived the requirement after the interview.[164] More importantly, Plaintiff does not show how this deviation from policy can be ascribed to a discriminatory motive. Plaintiff does not show how the deviation could have been discriminatory at all. The same holds true for the fact that Skip Beerden was purportedly not a "peer" as required by DOTD regulations. The Court finds that Plaintiff has failed to connect either of those policy deviations to a discriminatory motive.

The Court also finds unavailing Plaintiff's argument that Latino's failure to create benchmark or sample responses for the interview questions is evidence of discriminatory motive. Latino provided a scale whereby the panelists rated each applicant's answer to each interview question on a scale from one to five, with one corresponding to "very strong

---

[161] *Julian v. City of Houston*, 618 F. App'x 211, 214, n.3 (5th Cir. 2015) (cleaned up).
[162] *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 459–60 (5th Cir. 2019) (citation omitted).
[163] *Id.* at 460.
[164] Rec. Doc. No. 13-8, p. 11; Rec. Doc. No. 16-1, p. 9–10.
66916

evidence the skill is not present and five corresponding to "very strong evidence the skill is present."[165] Plaintiff contends that this scale was insufficient and cites a portion of DOTD's "Selecting the Best" manual as an example of properly constructed benchmark responses:[166]

Describe a time when you were tasked with multiple projects. Tell how you prioritized your work to manage the multiple tasks/assignments.  (5 Points)

| | |
|---|---|
| 5 points | Regularly uses daily planner (and/or some other calendar/planning tool) |
| | Prioritizes tasks according to difficulty to complete and deadlines |
| | Successfully uses all available resources to complete tasks |
| 3-4 points | Makes notes to remember what to do |
| | Routinely asks important questions to determine the order of work |
| | When in doubt, asks for help |
| 1-2 points | Describes inappropriate/ineffective methods; has trouble deciding what to do first |
| | Does not like to bother others to find out what is more important |
| | Does not perform best work when under pressure/deadlines |

Under the facts of this case, even if Latino's scale was violative of DOTD policy, that does not raise a fact issue as to pretext. Compared to the example above, Latino's scale creates an increased risk of using the subjectivity of the scale as a vehicle for discrimination. But the undisputed facts belie that possibility.

The Parties agree that none of the panelists knew the ages of the applicants, which strongly decreases the ability of the panelists to utilize the additional wiggle room provided by Latino's subjective benchmarks in a discriminatory fashion.[167] Latino also awarded Roussell and Desselle the same score (35), which suggests he did not exercise the

---

[165] Rec. Doc. No. 13-8, p. 9; Rec. Doc. No. 16-1, p. 8.
[166] Rec. Doc. No. 16-10, p. 28.
[167] Rec. Doc. No. 13-8, p. 10; Rec. Doc. No. 16-1, p. 8.
66916

subjectivity he provided in a discriminatory way.[168]  The evidence does not connect this departure from procedure to a discriminatory motive.

Plaintiff also attacks Latino's allocation of points within the matrix as discriminatory.[169] Plaintiff contends that the weight given to the interview (50 points) violated DOTD selection rules. According to Plaintiff, "[t]he selection process rules allotted only fifteen (15) points for the interview process, not fifty (50) points as Mr. Latino chose for this selection."[170] Plaintiff supports this assertion with a citation to the "Selecting the Best" manual's sample "Ranking Descriptions Form."[171]  DOTD counters that the scores on the Ranking Descriptions Form are not binding.[172]

Plaintiff places undue importance on the examples provided in the Ranking Descriptions Form. The form is labeled "Sample" and states that "[t]hese are EXAMPLES of ranking descriptions. Please create descriptions that are appropriate for the position you are filling."[173] The sample form provides twenty-five points for job related experience, fifteen points for the interviews, ten points for prior performance reviews, ten points based on attendance, ten points for job related education, ten points for job related training, ten points for supervisory experience, and five points each for professional demeanor and oral communication.[174]

---

[168] Rec. Doc. No. 13-1, p. 9.
[169] Latino allocated the points as follows: fifteen points for job related experience; fifteen points for supervisory experience; five points based on prior performance reviews; five points based on attendance; forty points for interview performance; five points each for communication and leadership/professionalism, both of which were allocated based on the applicants' performance in the interviews; and ten points for the interview with the Secretary, for a total of 100 available points.
[170] Rec. Doc. No. 16, p. 17.
[171] *Id*.
[172] Rec. Doc. No. 19, p. 9.
[173] Rec. Doc. No. 16-8, p. 1.
[174] *Id*. at 1–3.
66916

Other portions of "Selecting the Best" severely undercut Plaintiff's argument. In the section that describes how to prepare the selection matrix, the "Mandatory and Optional Categories" section directs the hiring manager to select from the categories listed above as appropriate for the position being filled.[175] The content of the next section "Determining the Appropriate Weight of Each Category" provides:

> Of the categories identified, determine weight or value based on relative importance of each and according to the hiring guidelines for the respective office. (Example: If public speaking/effective oral communication skills are critical to the position, more weight should be given to Oral Communication for this position than for positions not requiring such skills). Total weight score for all considered factors on the applicant matrix should equal 100.[176]

In sum, "Selecting the Best" clearly directs the hiring manager to weight the different categories according to the specific position under consideration. The Court finds that Plaintiff's argument that the interview value was capped at fifteen points is meritless, and Latino did not deviate from procedure by weighting the interview forty points in this case.

Having concluded that Latino exercised considerable discretion in allocating points within the matrix, the Court turns to whether he exercised that discretion in a discriminatory way. The matrix allowed the applicants to earn one point per year of job-related and supervisory experience up to a maximum of fifteen each.[177] Latino attested that he capped these two categories at fifteen points each because "just because someone may have been with DOTD for a longer period of time in a management-level position than another candidate, the longevity in tenure does not necessarily translate into better overall qualifications as a leader or manger. It is the skill set of leadership and

---

[175] Rec. Doc. No. 13-1, p. 55.
[176] Rec. Doc. No. 13-1, p. 56.
[177] Rec. Doc. No. 13-1, p. 4.
66916

management that matters for the DA position, not tenure."[178] Plaintiff offers nothing to rebut DOTD's proffered explanation beyond the assertion that Plaintiff would have received more points had those categories been weighted more.[179] The Court finds that this is neither enough to raise the specter of discrimination nor enough to create a genuine issue of material fact as to pretext for the jury. The ADEA forbids age discrimination, but it does not guarantee gerontocracy by forcing employers to value tenure above all else.

Plaintiff also argues that Latino's purported remark regarding a different employee, Jay Cornell, is probative of discrimination and demonstrates that DOTD's proffered explanations are pretextual.[180] Latino purportedly said that Cornell was too old to be productive and that he needed to go home and retire. DOTD invokes the "stray remark" doctrine in an effort to depreciate the significance of Latino's statement, but Plaintiff asks the Court to consider the applicability of the stray remark doctrine in light of Supreme Court and Fifth Circuit jurisprudence criticizing the doctrine.

The stray remark doctrine is nuanced. Where a plaintiff offers remarks as direct evidence, the Fifth Circuit directs courts to apply the *CSC Logic*[181] four-part test to determine if the remarks are sufficient to overcome summary judgment.[182] On the other hand, where, as here, the plaintiff offers remarks as circumstantial evidence alongside other alleged discriminatory conduct, the less strenuous, two-part *Russell* test applies.[183] Applying *Russell*, Plaintiff "need only show (1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a

---

[178] *Id.*
[179] Rec. Doc. No. 16, p. 24.
[180] Rec. Doc. No. 16, p. 25.
[181] *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir.1996).
[182] *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012).
[183] *Id.* (citing *Russell v. McKinney Hosp. Venture*, 265 F.3d 219, 226 (5th Cir. 2000)).
66916

person with influence or leverage over the relevant decisionmaker."[184] However, when analyzing the effect of a comment, the Fifth Circuit has considered the context in which the comment was made and clearly stated that "sporadic" comments do not suggest age-based animus.[185]

Latino's comment likely qualifies under *Russell*, however, the Court finds that Latino's comment was "sporadic." In his deposition, Plaintiff testified that Latino made the comment "ten years ago" when Plaintiff was Assistant Secretary.[186] Plaintiff was deposed in July 2020, which puts the comment almost eight years removed from the events giving rise to this suit.[187] An eight year old comment about a different employee is not probative of discrimination in the instant case, particularly where there is little other evidence of discrimination.

Another factor undercuts Plaintiff's argument. The Fifth Circuit has held that "discrimination is less likely when the supervisor is in the same protected class as the plaintiff."[188] Plaintiff does not controvert Latino's assertion that four of the panelists were over 50 years old at the time of the interview.[189] Dr. Kalivoda was 60; Skip Beerden was 70; Lesia Warren was 56; Chris Knotts was 56; Latino was 48; and Plaintiff was 56.[190] Four of the seven panelists were therefore within (or above) the same protected class as

---

[184] *Id*. (citation omitted).
[185] See e.g. *Squyres v. Heico Companies, L.L.C*., 782 F.3d 224, 236 (5th Cir. 2015). *Compare Reed*, 701 F.3d at 441–42 (holding that stray remarks were not evidence of age animus in part because they were "sporadic"), and *Sandstad v. CB Richard Ellis, Inc*., 309 F.3d 893, 900 (5th Cir.2002) (holding that a similar "old guy" comment, made in response to a "young guy" comment, was not evidence of discriminatory animus), *with Russell*, 235 F.3d at 226 (holding that an "old bitch" comment was evidence of discriminatory animus when it was made so frequently that the plaintiff had to wear earplugs and when the comments continued even after the plaintiff confronted the employee about what he was saying).
[186] Rec. Doc. No. 16-2, p. 46–47.
[187] *Id*. See also Rec Doc No. 16-1, p. 3.
[188] *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 460–61 (5th Cir. 2019).
[189] Rec. Doc. No. 13-1, p. 8.
[190] *Id*.

Plaintiff, which makes it unlikely they would discriminate against Plaintiff on the basis of age. Further, although Latino is not quite 50 years old, his proximity to the threshold of a class shared with Plaintiff makes it less likely he would discriminate against Plaintiff.[191] Additionally, the Court notes that Michael DeSelle, who was 50 at the time of the interview and therefore in the same protected class as Plaintiff, also ranked higher than the Plaintiff and advanced to the interview with the Secretary.[192] Therefore, the Court concludes that Plaintiff has failed to demonstrate summary judgment evidence of a material issue of fact as to pretext. DOTD is entitled to summary judgment.

## III.   CONCLUSION

In light of the foregoing, DOTD's *Motion for Summary Judgment*[193] is granted.

*Judgment* shall be rendered consistent with this *Ruling*.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>June 14, 2021</u>.


_____
**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[191] *McMichael*, 934 F.3d at 460–61.
[192] Rec. Doc. No. 13-8, p. 10; Rec. Doc. No. 16-1, p. 9.
[193] Rec. Doc. No. 13.
66916